**UNITED STATES DISTRICT COURT**
**WESTERN DISTRICT OF LOUISIANA**
**LAKE CHARLES DIVISION**

| | | |
|---|---|---|
| **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA, INC.** | : | **CIVIL ACTION NUMBER:** _____ |
| **VERSUS** | : | **JUDGE:** _____ |
| **AMGUARD INSURANCE COMPANY** | : | **MAGISTRATE JUDGE:** _____ |

**PETITION FOR DAMAGES**

**NOW INTO COURT**, through undersigned counsel, comes **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA**, domiciled in Calcasieu Parish, Louisiana, who respectfully states that:

1.

**BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA** is a non-profit corporation with a mission of creating and supporting one-to-one mentoring relationships that ignite the power and promise of youth. Volunteer mentors from across Southwest Louisiana are matched with local children to support each child's social and emotional development, with the goal of building resilience and promoting the mental health and well-being of over one hundred local children. The dedicated staff of **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA** monitor and coordinate the program from the office located at 4135 Common Street Lake Charles, Louisiana 70607.

Hurricane Laura and its aftermath caused significant damage to the Common Street office, which interrupted many of the services **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA** provide the community. Unfortunately, inaction on the part of the organization's insurance company now requires **BIG BROTHERS/BIG SISTERS OF**

**SOUTHWEST LOUISIANA** to file this lawsuit to force the insurance company to abide by its contract and Louisiana law, further delaying this organization's ability to return to full service.

2.

Defendant herein is **AMGUARD INSURANCE COMPANY**, a foreign insurance company authorized to do and doing business in the Parish of Calcasieu, State of Louisiana, hereinafter referred to at times as "**AMGUARD**."

3.

At all times relevant herein, **AMGUARD** had in full force and effect a policy of commercial property insurance providing coverage in favor of **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA** bearing Policy Number: C1GP000184-00.

4.

On August 25, 2020, Hurricane Laura entered the Gulf of Mexico and began to intensify. By the evening of August 26, 2020, Hurricane Laura was designated a Category 4 hurricane after completing a process known as "rapid intensification." The storm made landfall at Cameron, Louisiana with sustained winds of 150 mph and a minimum central pressure of 938 millibars.

5.

Widely known publicly available information, namely well-established ratings relied upon by the National Oceanic and Atmospheric Administration's National Hurricane Center, describes the expected damage from a Category 4 Hurricane. **AMGUARD** knew well before landfall exactly what type of damage to expect from a storm of this severity:

> Well-built framed homes can sustain severe damage with loss of most of the roof structure and/or some exterior walls. Most trees will be snapped or uprooted and power poles downed. Fallen trees and power poles will isolate residential areas. Power outages will last weeks to possibly months. Most of the area will be uninhabitable for weeks or months. *Saffir-Simpson Hurricane Wind Scale.*

6.

Unfortunately, Hurricane Laura experienced little to no weakening prior to landfall making it the strongest hurricane to affect Southwest Louisiana in recorded history. As expected, damage in Calcasieu Parish was catastrophic.

7.

The available data confirmed Hurricane Laura was a catastrophic storm. The National Weather Service office in Lake Charles, Louisiana recorded the highest wind gust in station history at 133 mph. There can be no reasonable dispute that the wind speeds exceeded this station record because the wind equipment used to record it failed shortly after the measurement was recorded. Further, the station deployed the Automated Surface Observing System, which is the most reliable and accurate sensor used to obtain barometric pressure readings. Barometric pressure readings are widely accepted as a key indicator of the strength of a hurricane. Barometric pressure directly influences wind because air flows from areas of high to low pressure. The eye of Hurricane Laura is believed to have passed nearly directly over the station when it recorded a station record minimum sea level pressure of 956 millibars. It is widely known and accepted that the areas impacted by the eye of a hurricane experience the highest winds and the most catastrophic damage.

8.

As residents of Calcasieu Parish are very aware, the aftermath of the storm can also be devastating. The damage wrought by Hurricane Laura left most homes and businesses exposed to rain and humidity. On August 28, 2020, before most residents had an opportunity to return and assess damage, much less begin temporary repairs, torrential rains inundated many homes and businesses, including the insured premises, because of damaged roofs, windows, doors, etc.

9.

Hurricane Laura caused significant damage to the **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA, INC.** (hereinafter referred to as "**BBBS**") building and contents.

10.

**AMGUARD** insured **BBBS'** business. The insurance contract between **AMGUARD** and **BBBS** is contained in Policy Number: C1GP000184-00.

11.

The insurance contract required **BBBS** to pay annual premiums in the amount of TEN THOUSAND, FIFTY-SEVEN AND 40/100 DOLLARS ($10,057.40). Had **BBBS** refused or failed to pay an annual premium the contract would have been terminated. **BBBS** never missed a payment and Policy Number: C1GP000184-00 was in full force and effect on August 27, 2020.

12.

The insurance contract required **AMGUARD** to pay **BBBS** the replacement cost of all wind damage caused to the business by Hurricane Laura.

13.

The insurance contract required **AMGUARD** to pay **BBBS** the replacement cost of all wind damage caused to the organization's personal property (contents) by Hurricane Laura.

14.

Under the Social Services Property Enhancement Endorsement, the insurance contract required **AMGUARD** to pay **BBBS** for Extra Expenses incurred during the period of restoration that **BBBS** would not have incurred in the absence of covered loss.

15.

Under the Social Services Property Enhancement Endorsement, the insurance contract required **AMGUARD** to pay **BBBS** for the actual loss of Business Income sustained due to the necessary suspension of **BBBS's** operations during the period of restoration.

16.

**AMGUARD** was timely notified of the loss and it timely initiated loss adjustment. An adjuster inspected the insured premises on September 7, 2020 on behalf of **AMGUARD**. This inspection constituted satisfactory proof of loss sufficient to provide **AMGUARD** with actual knowledge of the scope and extent of the damage to **BBBS**.

17.

**AMGUARD** received a copy of the adjuster's estimate of the damage to the business on October 15, 2020. **AMGUARD** determined that the Replacement Cost Value of all damage to the building totaled $98,376.06. Due to the insufficient scope of damage, **BBBS** retained an adjuster to fully evaluate the scope of damage to their property. **BBBS** will show that the complete scope of observable damage is **$254,302.81**.

18.

The scope of the damage estimated by **AMGUARD** failed to adequately account for all wind damaged items.

19.

Nonetheless, Louisiana law required **AMGUARD** to unconditionally tender the full amount of their estimate within thirty days. Despite this legal requirement **AMGUARD** has not tendered any portion of the estimated loss to **BBBS**.

20.

**AMGUARD's** decision not to unconditionally tender the undisputed value of this claim within thirty days after receipt of satisfactory proof was arbitrary, capricious and without probable cause. As a result, **AMGUARD** shall be responsible for a penalty, in addition to the amount of the loss, of fifty percent damages on the amount found to be due from **AMGUARD** to **BBBS** in addition to reasonable attorney fees and costs.

21.

**AMGUARD** also misrepresented insurance policy provisions relating to loss of Business Income. Specifically, **AMGUARD** denied coverage for loss of Business Income because the fundraising events that provide the bulk of the non-profit corporation's income is derived from offsite locations, *i.e.*, fundraisers at locations such as golf courses. However, the Business Income policy provision contains no such distinction or requirement. Instead, the provision clearly states that the loss of Business Income must be sustained "due to the necessary 'suspension' of your 'operations'" and that suspension of operations must be "caused by or result from a Covered Cause of Loss." As a result of this misrepresentation **BBBS** is entitled to a penalty assessed against **AMGUARD** in an amount not to exceed two times the damages sustained.

22.

**AMGUARD** has violated Louisiana law, specifically, LSA-R.S. 22:1892 and LSA-R.S. 22:1973. **AMGUARD's** denial of this claim is in violation of its statutory obligations to its insured. **AMGUARD** is liable for all damages suffered by **BBBS** for **AMGUARD's** breech of the duty to their insured of good faith and fair dealing. As a result of the arbitrary and capricious

conduct of **AMGUARD**, **BBBS** has suffered and is entitled to recover for the following items of damage(s):

      a. Past, present, and future mental anguish, pain, and inconvenience;

      b. the cost of repairs and/or replacement of Petitioners' damaged Property;

      c. additional living expenses;

      d. general and special damages;

      e. attorney fees, penalties, and costs; and

      f. legal interest.

**WHEREFORE**, the premises considered, Petitioner prays that:

I. Defendant **AMGUARD INSURANCE COMPANY** be served with a copy of this petition and be duly cited to appear and answer same;

II. After due proceedings had, there be judgment herein in favor of Petitioner **BIG BROTHERS/BIG SISTERS OF SOUTHWEST LOUISIANA** and against Defendant **AMGUARD INSURANCE COMPANY** for such sums as may be reasonable under the circumstances of this case, together with legal interest thereon from the date of judicial demand, until paid, and all costs of these proceedings; together with penalties and attorneys' fees as provided by law; and

III. Petitioners be granted all further and different relief as the facts, law, and equity of this case require.

        RESPECTFULLY SUBMITTED BY
        BROUSSARD + WILLIAMSON
        *Attorneys for Plaintiff*

        <u>/s/ Michael Williamson</u>
        AARON BROUSSARD (#30134)
        STEVEN BROUSSARD (#3518)
        MICHAEL WILLIAMSON (#31004)
        JASON R. BELL (#30860)
        RACHEL K. COUVILLION (#33927)

        **BROUSSARD + WILLIAMSON**

        1301 Common Street
        Lake Charles, LA   70601
        (337) 439-2450  Telephone
        (337) 439-3450  Facsimile

**SERVICE INSTRUCTIONS:**

**AMGUARD INSURANCE COMPANY**
*Through its registered agent,*
Louisiana Secretary of State
8585 Archives Avenue
Baton Rouge, Louisiana 70809